IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:

RICHARD MCKAY OSBORNE, JR.　　　　　CASE NO: 17-14920 aih

DANIEL M. MCDERMOTT　　　　　　　　CHAPTER 7
UNITED STATES TRUSTEE

　　　　　　　　　　　　　　　　　　　　ADVERSARY PROCEEDING NO.
　　　　　　Plaintiff　　　　　　　　　　18-01124 aih

　　　Vs

RICHARD MCKAY OSBORNE, JR.
　　　&
TRICIA A. OSBORNE

　　　　　Defendants

**DEBTOR'S MOTION FOR SUMMARY JUDGMENT**

Now come Debtors, Richard M. Osborne, Jr and Tricia Osborne, by and through undersigned counsel and requests that this Court grant Summary Judgment in favor of Debtors in the above captioned matter. The reasons for this request are set forth herein.

STATEMENT OF FACTS:

The Debtors field a Petition for Chapter 7 relief on August 21, 2017 in the Northern District of Ohio baring case number 17-14920. In this Petition they listed all of their assets and their liabilities. The Debtors also filed the Debtor pay advises in the form of the combined Profit and Loss Report from Quick Books for the six months prior to the Bankruptcy filing. See Exhibit A. The Debtors, primarily Mr. Osborne who is the sole bread winner for the Debtors, listed all income and expenses from Osborne Real Estate Services, LLC through which he ran all income for Debtors. The Profit and Loss statement was annotated to account for income that while run through Osborne Real estate Services, LLC was received for consulting work provided by Mr.

1

Osborne, Jr. The Consulting Income was from work performed for RMO and David Oil and amounted to $9000.00 per month. The remainder of the income was from sales and commissions for the work Mr. Osborne did for Osborne Real Estate Services, LLC. Debtors accounted for their income on the Profit and Loss statement filed with their petition. Mr. Osborne, Jr. testified at the 2004 Examination held on April 6, 2018 that all income he receives, excepting his payment for teaching at Lakeland Community College, is deposited into the bank account for Osborne real estate Services, LLC. Exhibit E Transcript of 2004 examination page 7, line 12-15; page 10, lines 18-19; page 14, lines 7-9; page 17, lines 22-24; page 18, lines 12-15; page 31, lines 22 through page 32, line 6; page 33, lines 4-11. Thus, the Profit and Loss Statement filed as 'pay advices' with the bankruptcy petition shows all income received by debtors into the company. The Profit and Loss statement includes the deposit of the check from Richard M. Osborne, Sr. as payment for the sale of the 'gold blob' completed by Richard M. Osborne, Jr. on his behalf. See Exhibit F Osborne Real Estate Services, LLC Transaction Detail by Account February 21 through August 31, 2017 deposit recorded June 2, 2107 from Richard Osborne, Sr. in the amount of $28,000.00. The deposit of the payment for assisting with the sale of the 'gold blob' is duly reflected in the Profit and Loss statement filed with the court. Further, the deposit of the check from Richard Osborne, Sr. for the sale of the 'gold blob' is reflected in the June 01, 2017 – June 30, 2017 bank statement for Osborne real Estate Services. Exhibit G. Debtor, Richard M. Osborne, Jr. is the sole owner of Osborne Real Estate Services, LLC. Exhibit H Articles of Organization issued by the State of Ohio. The business account held by Osborne Real Estate Services at Erie bank is solely owned by the LLC and cannot be accessed by Tricia Osborne. Exhibit I letter from Erie Bank. She has no actual knowledge of any deposits made to that account nor any control over said account.

On April 19, 2017 Richard M. Osborne, Sr. purchased a 'gold blob' at the private and closed estate auction for his deceased father's estate. The 'gold blob' was purchased along with other jewelry that was auctioned to the family members present. Exhibit B auction purchases of Richard M. Osborne. The purchase receipt states that Mr. Osborne, Sr. paid for the items with "check #16756". See Exhibit C check to the "Jerome T. Osborne Estate baring number 16756. Richard M. Osborne, Sr. testified at his 341 Exam on July 12, 2018 that he "…bought it. I think I paid $3,000 for it". Exhibit D partial transcript of 341 examination of Richard M. Osborne, Sr. at page 14, lines 15-16. Mr. Osborne, Sr. decided to work with his son, 'Ricky', or Mr. Osborne, Jr. who is a geologist to "let's see what it's worth". Exhibit D page 14, lines 16-21. Mr. Osborne, Sr. further said that "Whatever **I** get, I'll split it with you.". Exhibit D page 14, lines 21-22 (bold added for emphasis). Mr. Osborne, Sr. stated that he "gave him" around $31,000. Exhibit D page 15, lines 6-8. Mr. Osborne, Sr. testified that he kept the remainder of the funds or directed them to go to his daughter. Exhibit D page 15, lines 1-11. Mr. Osborne, Sr. maintained throughout his 341 examination that he bought the 'gold blob', maintained ownership of it and determined who and how the funds received from the sale of same where to be distributed. Exhibit D pages 14-15.

On April 6, 2018 the United States Trustee held a deposition of Richard M. Osborne, Jr. under an order for a 2004 examination. Mr. Osborne, Jr. stated that he is a geologist. Exhibit E page 16, line 4. Mr. Osborne, Jr. was asked if he knew of the 'gold blob' and he stated that his father, Richard M. Osborne, Sr. had purchased the item at a private auction for his father's family and that Mr. Osborne, Jr. was not present at that sale. Exhibit E page 22, line 20- page 23, line 14. Mr. Osborne, Jr. stated that he took pictures of the 'gold blob' and sent them off for analysis at the behest of his father. Exhibit E page 23, lines 10-23. Mr. Osborne, Jr. went on to testify that he had trouble identifying what the 'gold blob' was or its value as he "couldn't take it anywhere,

3

because he (Mr. Osborne, Sr.) wouldn't let me have it…" Exhibit E page 24, lines 7-10. Mr. Osborne, Jr. continued to work for his father to identify the value of his father's asset, but his "father would not overnight it" for analysis either. Exhibit E page 25, lines 11-12. Mr. Osborne, Sr. would not let the 'gold blob' out of his possession until the sale was brokered by Mr. Osborne, Jr based upon phots of the object. Exhibit E pages 16-26. Debtors never had ownership of the 'gold blob'.

On May 6, 2019 a deposition of Tricia Osborne was held and conducted by the United States Trustee. At said deposition Mrs. Osborne testified that she had no knowledge of her husband's actions regarding the 'gold blob' until the Adversary Complaint was filed. She did not assist in the marketing of the 'gold blob' or in any way know the details of the transaction her husband had with her father-in-law. A transcript of the deposition has not been ordered as a cost saving measure by the Debtors. Further, Mrs. Osborne testified that she has no access to the Osborne Real Estate Service bank account held at Erie Bank. Exhibit I. She, therefore, had no knowledge of the deposits, withdrawals or other transaction within that account.

LAW and ANALYSIS:

Debtors are entitled to summary judgment in the above captioned matter. Summary Judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in non-moving party's favor, that conclusion favors the movant. *Rinehart v. Martin,* 2013-ohio-4966 (11th Appellate No. 2013-P-0036). Civ.R. 56(C) states the following:

> "Summary judgment shall be rendered forthwith if the pleadings…and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be

> considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, an only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

The Adversary Complaint filed by the United States Trustee states that it seeks to revoke the discharge of the Debtors under Section 727(d) of the Bankruptcy Code citing the following provision: "On request of … The United States Trustee…and after notice and a hearing, the court shall revoke the discharge granted under subsection (a) of this section if – (1) such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;". The U.S. Trustee cites reference to In Re: Keeney, 227F.3d 679 as authority for its filing to revoke discharge. In that case the Debtors were denied a discharge due to having failing to disclose that they maintained a beneficial interest in property owned by their parents. See In re: Keeney. The court in that case applied the continuing concealment doctrine to find that the Debtors should be denied a discharge under section 727(a)(2)(A) of the Bankruptcy Code which encompasses two elements: (1) a disposition of property, such as concealment, and (2) "a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property". Id at 683. The Court must find the above elements to have been proven by a preponderance of the evidence to merit a denial or revocation of discharge. Id at 683. The Bankruptcy Code should be construed liberally in favor of the debtor. In Re: Brown, 108 F.3d 1290, 1292. For a Debtor to be denied or have a discharge revoked under provisions of section 727 the creditor or movant must show by preponderance of the evidence knowingly and fraudulently made an oath that relates to a material fact. Id at 1294. An honest error or mere inaccuracy is not a proper basis for denial or revocation of discharge. Id at 1295. A debtor is entitled to a discharge if the false information is

5

the result of mistake or inadvertence.  In re: Keeney at 686.   The Plaintiffs in a case for denial or revocation of discharge must prove all of the following elements: (1) the statement was made under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the statement was made with fraudulent intent; (5) the statement related materially to the bankruptcy case.  In re:  Beaubouef, 966 F.2d 174, 178.  A 'material' false oath rises to the level of revocation of discharge if it bears a relationship to the debtor's business transaction or estate, concerns the discovery of asset, business dealings, or the existence and disposition of the debtors property.  Id at 178.   The Court may deduce fraudulent intent from all the facts and circumstances of the case.  In Re:  Kenney at 686.

     In its Complaint to revoke the discharge of the Debtors the U. S. Trustee asserted that the Debtors knowingly and fraudulently or with reckless disregard for the truth made one or more false oaths.  The U.S. Trustee's first assertion is that it believes the fact that the Debtors did not list the sale or transfer of the 'gold blob' on their Statement of Financial Affairs (SOFA) Question #18 as to transfers outside the ordinary course of business within two years of the filing of the Petition is a reason for revocation of discharge under Section 727(d).  The second event that the U.S. Trustee states indicates a false oath is that the Debtors did not disclose payment for the 'gold blob' as income other than through business or employment on SOFA Question #5.

     The first assertion of the U.S. Trustee is that the Debtors transferred property that they owned other than in the ordinary course of business on SOFA Question #18 and fraudulently failed to list the transaction.  This assertion is rebutted by each of the Petition filed by the Debtors under oath that they did not transfer such property, the purchase of the 'gold blob' by Mr. Osborne, Sr., the refusal of Mr. Osborne, Sr. to allow his son possession of the "gold blob" even to sell it on his instruction and the treatment of the proceeds from the sale by Mr. Osborne,

6

18-01124-aih    Doc 16    FILED 06/19/19    ENTERED 06/19/19 10:00:41    Page 6 of 10

Jr. as business income. When asked at the 2004 exam if he listed all of your business transactions as required on the Statement of Financial Affairs Mr. Osborne, Jr. stated that he had. Exhibit E page 9, lines 17-20. Richard M. Osborne, Sr. testified under oath in his 341 examination that he purchased the 'gold blob' from the estate auction held for his father's estate. The Debtor has provided an inventory of the items purchased by Mr. Osborne, Sr. and a check from Richard M. Osborne, Sr. to the Estate of Jerome Osborne payment due for the items including the 'gold blob'. See Exhibits B & C. Richard M. Osborne, Jr. stated, under oath, that his father would not give him physical possession of the 'gold blob' even for him to sell it at his father's instruction. Richard M. Osborne, Jr. stated under oath that he was not present at the estate sale of his grandfather. Exhibit E page 22, line 25. Therefore, he could not purchase the 'gold blob'. Mr. Osborne, Jr. is a geologist who works for his father's companies providing among, other services, those applying his geology expertise. Exhibit E page 16, lines 3-5. Upon purchase of the 'gold blob' Mr. Osborne, Sr. engaged his son to sell the 'gold blob' for payment. Exhibit D page 32, lines 21-23. Mr. Osborne, Jr. would often be tasked with unusual assignments by his father and he "would take care of it and get it done'. Exhibit E page 27, lines 12-14. Being tasked with the sale of an unusual item was not outside the course of the contractual work the Debtor did for his father. Nor is it reasonable, under the circumstances of Richard M. Osborne, Jr.'s normal scope of employment by his father, for the court to assume selling the 'gold blob' for his father is outside the expectations of his regular duties. Further, Mr. Osborne, Jr. deposited the funds from the sale of the 'gold blob' into an account owned by Mr. Osborne, Sr. and only then was paid for his work in selling the 'gold blob'. When Mr. Osborne, Jr. received the funds for his work in the sale of the 'gold blob' he deposited the funds into his business account for Osborne Real Estate Services, LLC as he did with all other transactional

income. See Exhibits F & G. The Debtors accounted for that income on the Profit and Loss statement filed with their petition. See Exhibit A. The Debtors treated the 'gold blob' as being owned by Richard M. Osborne, Sr. though all transactions dealing with same. To state that they owned the 'gold blob' on the petition filed with court would be the real fraud in this case. Therefore, the Debtors, when construing the facts in a light most favorable to the U.S. Trustee and by a preponderance of evidence, the analysis necessary provides that reasonable minds can come to only one conclusion. That conclusion is that the 'gold blob' was never owned by Debtors and thus could not be listed on their SOFA in Question #18 or that assertion would have been fraudulent. When interpreting the Bankruptcy Code liberally in favor of the Debtors and based on the facts and circumstances of this case to hold that these Debtors made or omitted a statement under oath that was and they knew was false and made with fraudulent intent is contrary to the deduction a court of reasonable mind could find and Summary Judgment should be granted in favor of the Debtors.

  In its second premise under which to deny the Debtor's discharge the U.S. Trustee alleges that they failed to disclose income other than from business or employment during the two years prior to the bankruptcy filing in SOFA Question #5. Mr. Osborne is the sole member of Osborne Real Estate Services, LLC. Exhibit H. In his 2004 exam Mr. Osborne, Jr. stated that he believed his wife was a 50/50 owner but he would have to check that. Exhibit E page 41, lines 9-12. Mr. Osborne, Jr. managed his business in such a way that he deposited all income from every source, except his teaching income from Lakeland Community College, through the Osborne Real Estate Service's account at Erie Bank. Mrs. Osborne is not a member of Osborne Real Estate Services, LLC and has no access to the business account at Erie Bank despite Mr. Osborne, Jr.'s erroneous assertion that she can access same. Exhibit I. Mrs. Osborne provided

8

18-01124-aih Doc 16 FILED 06/19/19 ENTERED 06/19/19 10:00:41 Page 8 of 10

testimony that she is not a signatory on the Osborne Real Estate Account in her deposition of May 6, 2019. Mr. Osborne manages information about his accounts on his Quick Books program. He tracks all deposits and withdrawals on that program. On June 2, 2017 he deposited the payment for his work on the sale of the 'gold blob' for his father into the Erie Bank account for Osborne Real Estate Services. Exhibit F. That transaction was recorded by Erie Bank on June 7, 2017. Exhibit G. The Debtors listed the deposit of the money received from the 'gold blob' on the Profit and Loss statement filed with their Petition. Exhibit A. The Debtors did not hide or attempt to deceive the Court regarding their income by failing to account for income from the sale of the 'gold blob'. On the contrary they made sure that the income was accounted for and included in the Profit and Loss statement provided with their filing. In his 2004 exam Mr. Osborne, Jr. made a statement that he was told by his accountant, one shared with his father who actually owned the 'gold blob', that he should classify the income from the sale of as a gift. Exhibit E page 45, line 2- page 46, line 6. An honest error or mere inaccuracy is not a proper basis for denial or revocation of discharge. In Re: Brown at 1295. Mr. Osborne, Jr. was following the advice of his accountant in categorizing the income. However, in considering the totality of the circumstances, the Debtors at all times treated the sale of the 'gold blob' as a business transaction. From the acceptance of an other unusual request from his father, to the lack of control that exhibit ownership, to the deposit of the check into an account owned by his father, to the payment received for serves related to the sale, to the deposit of the funds into the Osborne Real Estate Services, LLC business account, to the accounting for it as business income to the sworn Petition that states that the Debtors asserted the income as in the ordinary course of business. A reasonable mind could not construe the actions of the Debtors, even looked at most favorably toward the Plaintiff, as knowingly and intentionally fraudulent as related to a material

9

18-01124-aih    Doc 16    FILED 06/19/19    ENTERED 06/19/19 10:00:41    Page 9 of 10

aspect of the case. Therefore, Summary Judgment in favor of the Debtors and retention of their discharge should be ordered by this Court.

Therefore, Summary Judgment in favor of Debtors and an order granting the retention of the discharge granted by this court is the only conclusion reasonable minds can come to.

Respectfully submitted,

/s/ Heather L. Moseman
Heather L. Moseman, Esq. (0076457)
MOSEMAN LAW OFFICE, LLC
Attorney for Debtors
8500 Station Street, Suite 210
Mentor, Ohio 44060
Telephone: 440-255-0832
heather@mosemanlaw.com

## CERTIFICATE OF SERVICE

I certify that on June 19, 2019 a true and correct copy of the **DEBTOR'S MOTION FOR SUMMARY JUDGMENT** was served:

Via the court's Electronic Case filing System on these entities and individuals who are listed on the court's Electronic Mail Notice List:

Scott R. Bellhorn, Office of US Trustee at scott.r.bellhorn@usdoj.gov

And by regular U.S. Mail, postage prepaid, on:

Richard M. and Tricia A Osborne, Jr. at 9050 Jackson Street, Mentor, OH 44060

/s/ Heather L. Moseman
Heather L. Moseman (0076457)
MOSEMAN LAW OFFICE, LLC